## ATLANTA COACH COMPANY *v.* COBB.

No. 9660. FEBRUARY 20, 1934. REHEARING DENIED MARCH 3, 1934.

*Bryan, Middlebrooks & Carter*, for plaintiff in error.

*Jones, Johnston, Russell & Sparks, Harris, Russell, Popper & Weaver*, and *Martin, Martin & Snow*, as amici curiæ.

*S. Holderness, J. Caleb Clarke*, and *A. E. Wilson*, contra.

BELL, J. Mrs. Betty R. Cobb brought a suit against Atlanta Coach Company to recover damages for injuries alleged to have been caused by the negligence of the defendant. The defendant was protected by an indemnity-insurance policy issued by United States Fidelity and Guaranty Company. The jury found a verdict in favor of the defendant, and Mrs. Cobb excepted to the overruling of her motion for a new trial. The judgment was reversed by the Court of Appeals. 46 *Ga. App.* 633 (168 S. E. 126). Certiorari was granted on the petition of Atlanta Coach Company. The bill of exceptions recites: "Upon the call of the case, counsel for the plaintiff then and there moved the court that the jury be qualified by purging the panel of any and all persons who were employees of, stockholders in, or related to employees of or stockholders in the United States Fidelity and Guaranty Company, which said company carried the liability insurance on the said defendant, agreeing for a money consideration to be responsible for damages sustained in accordance with the provisions of the policy. Which

motion to thus purge the jury and to qualify said jury the court overruled, and denied counsel the right to purge the said jury, or to inquire into the question of the relation of any of the prospective jurors to employees of or stockholders in the said United States Fidelity and Guaranty Company, as hereinbefore set out, to which ruling plaintiff then and there excepted by exceptions pendente lite and assigned the same as error, and now excepts and assigns the same as error, and says that the court erred in failing and refusing to qualify the said jury and purge the same of any and all employees of, or stockholders in, or persons related to employees of or stockholders in the said United States Fidelity and Guaranty Company."

The refusal of the trial court to purge the jury was also assigned as error in the plaintiff's motion for a new trial, one of the grounds of which was as follows: "The court refused to qualify the jurors touching their competency with reference to the United States Fidelity and Guaranty Company, it having been admitted to the court by counsel for the defendant that said United States Fidelity and Guaranty Company had issued a policy of insurance to the defendant in said case, to indemnify the defendant against loss that it might sustain by reason of a suit such as the plaintiff had brought in the instant case. Counsel for the defendant likewise admitted that said United States Fidelity and Guaranty Company employed them in the defense of said case, and admitted that the policy covered this particular claim for damages; movant insisting that any person interested in said insurance company would be disqualified as a juror. Movant insists that in failing to qualify said jury, or permitting counsel for the plaintiff to question said jurors touching their competency, and failing to allow the plaintiff to see whether or not said jurors were competent and qualified, denied to the plaintiff a substantive legal right; and she insists that the same was error. Movant further insists that such a ruling on the part of the court would permit, and possibly did allow, jurors who were interested in said insurance company to serve on said jury; movant being at sea, unable to determine except by proper questioning in the presence of, and by permission of, the trial judge; and movant insists that for said reason it was error. Movant further insists that the ruling of the court in denying her the right to place said jurors on their voir dire had a tendency to create in the minds of plaintiff

and her counsel an uncertainty as to the qualifications of the jurors trying said case, which rendered them less efficient in the management thereof, and rendered them less able to intelligently and properly select or strike a jury, which she insists was to her injury, and therefore insists was error."

In opposition to the motion, the defendant filed affidavits from all of the twenty-four jurors composing the panel from which the jury of twelve who tried the case were selected. Each of the jurors deposed that he was not an officer, employee, or stockholder, and was not related to a stockholder, of United States Fidelity and Guaranty Company. The jurors who executed these affidavits included the twelve whose names were stricken, as well as the twelve who were chosen and who rendered the verdict in the case. The defendant also filed affidavits from officers of the indemnity company, from which it appeared that none of the jurors were stockholders of the company. These several affidavits were attached to a petition which was ordered by the trial judge to be filed "as a part of the record in said case, so that the affidavits therein contained may be considered by the court in passing upon the plaintiff's motion for a new trial." It was further ordered that a copy of the petition and the affidavits be served upon counsel for the plaintiff, "so that the plaintiff or her attorney of record may have an opportunity to make a counter-showing or file counter-affidavits before the motion for a new trial is finally disposed of." Service was acknowledged by counsel for the plaintiff, but no counter-showing was made. In the decision by the Court of Appeals it was stated that "the controlling question presented by the record is whether the judge committed error in overruling the timely motion to purge the jury." The ruling of the Court of Appeals upon this question is made the sole basis of the assignments of error in the petition for certiorari. It is not contended that the verdict for the defendant was demanded by the evidence. Certiorari was granted mainly because the decisions of the appellate courts of this State, including certain decisions by the Supreme Court, appeared to be in conflict upon the question presented.

After a careful consideration of the authorities, it is the opinion of this court that the decision of the Court of Appeals as complained of in the petition for certiorari is correct and should be affirmed. The decision as rendered by that court is, in the main,

such a thorough and logical presentation of the law that the question comes to us relieved of much of the difficulty that would otherwise have attended it.

Penal Code § 858 is as follows: "In civil cases and cases of misdemeanors in the superior court, each party may demand a full panel of twenty-four competent and impartial jurors from which to strike a jury; and when one or more of the regular panel of traverse jurors is absent, or for any reason disqualified, the presiding judge, at the request of counsel for either party, shall cause the panel to be filled by tales jurors to the number of twenty-four, before requiring the parties, or their counsel, to strike a jury." The following are some of the decisions relating to the manner of selecting a jury in civil and *misdemeanor* cases: *Mayor &c. of Columbus* v. *Goetchius,* 7 *Ga.* 139; *Justices* v. *Griffin &c. Plank Road Co.,* 15 *Ga.* 39; *Howell* v. *Howell,* 59 *Ga.* 145; *Holton* v. *Hendley,* 75 *Ga.* 847 (2); *Haney School Furniture Co.* v. *Hightower Baptist Institute,* 113 *Ga.* 289 (38 S. E. 761); *Sullivan* v. *Padrosa,* 122 *Ga.* 338 (50 S. E. 142); *Hilton & Dodge Lumber Co.* v. *Ingram,* 135 *Ga.* 696 (70 S. E. 234); *Whitworth* v. *State,* 155 *Ga.* 395 (117 S. E. 450); *Bryan* v. *Moncrief Furnace Co.,* 168 *Ga.* 825 (149 S. E. 193); *Schnell* v. *State,* 92 *Ga.* 459 (17 S. E. 966); *Crew* v. *State,* 113 *Ga.* 645 (1) (38 S. E. 941); *Jacobs* v. *State,* 1 *Ga. App.* 519 (2, 3) (57 S. E. 1016); *Bullard* v. *State,* 14 *Ga. App.* 478 (81 S. E. 369); *Temples* v. *Central of Georgia Ry. Co.,* 15 *Ga. App.* 115 (82 S. E. 777). The Civil Code of 1910, § 4997, provides as follows: "The law in reference to grand and petit jurors, to jury commissioners, to the selection, drawing, impaneling, and other matters relating to jurors, being in the main applicable alike to civil and criminal cases, is omitted here, but will be found in the Penal Code." This section must be construed with § 858, and it contains nothing that would require a departure from the rule as to the selection of a jury, and the right to have the jurors placed upon their voir dire, in civil and misdemeanor cases, as laid down in any of the decisions referred to above, nor as stated in any other decision to which reference will be made in this opinion. The provisions of section 999 of the Penal Code to the effect that on calling each juror the State or the accused may make either one of certain objections, including an objection based upon relationship, are applicable only in felony cases.

Under the decision as delivered by Mr. Justice Hines in *Bryan* v. *Moncrief Furnace Co.*, supra, the plaintiff had the right to a panel of twenty-four impartial jurors from which to select the trial jury; and it is also apparent from the decision in that case that the course adopted by counsel for the present plaintiff was in conformity with the correct practice, where only parties to the record are concerned. Should a different rule apply in a case where, as here, an indemnity company is pecuniarily interested though not a party to the record? While the rule may not be absolutely the same, we are of the opinion that it is substantially so. Undoubtedly an officer, employee, or stockholder of the indemnity company, or one related to a stockholder, would be disqualified as a matter of law to serve as a juror in such case, and there is no contention to the contrary by counsel in the present case. Cf. *Dobbins* v. *Marietta,* 148 *Ga.* 467 (97 S. E. 439). Where there is reasonable cause to believe that a juror may be so disqualified, it is not only proper but apparently necessary that he should be placed upon his voir dire for the purpose of determining this question, and *whatever is necessary for the proper and orderly conduct of a trial or for the selection of a competent and impartial jury therefor can not be said to be erroneous.* While our conclusion as to the propriety of the request made in this case may collide with decisions by some other courts, it is supported by the weight of authority. Jessup *v.* Davis, 115 Neb. 1 (211 N. W. 190, 56 A. L. R. 1403). This question is fully annotated in 56 A. L. R. 1418 et seq. See also 35 C. J. 394, and notes in L. R. A. 1915A, 153.

We may concede that the mention of an indemnity contract in the argument of counsel or any other *impertinent* reference thereto would be objectionable; but there is a vast difference between instances of this character and a bona fide effort to preserve the right of trial by an impartial jury. Cf. *O'Neill Mfg. Co.* v. *Pruitt,* 110 *Ga.* 577 (36 S. E. 59) ; *Sims* v. *Martin,* 33 *Ga. App.* 486 (2) (126 S. E. 872) ; *Bibb Mfg. Co.* v. *Williams,* 36 *Ga. App.* 605 (137 S. E. 636) ; *Farrar* v. *Farrar,* 41 *Ga. App.* 120 (152 S. E. 278) ; *Atlanta Coca-Cola Bottling Co.* v. *Shipp,* 41 *Ga. App.* 705 (154 S. E. 385) ; *Chunn* v. *McRae,* 43 *Ga. App.* 417 (159 S. E. 130). Where an indemnity company elects to come into this State and to conduct a business whereby it may be rendered financially interested in the result of litigation, an interest thus arising can not be concealed or

shrouded in mystery, where to do so would abridge the right of a plaintiff to pursue the lawful procedure in the selection of a jury. The company having agreed to indemnify the defendant, its own interest in the result of the litigation would appear to be equal to, if not even greater than, that of the defendant; and when it once appears that an indemnity contract does exist in a particular case, the matter of purging the jury as to relationship to such company is not less important than if the company were an actual party. It is therefore beside the mark to argue that the inquiry should be refused merely because the company was not an actual party. The company in executing the contract was presumed to know the law upon this question, and it was further charged with knowledge that under the law of this State parties in civil cases are entitled to a panel of twenty-four competent and impartial jurors from which to strike a jury. Since in the making of an indemnity contract both of the parties thereto are obliged to anticipate that in a suit against the insured the interest of the company may affect the qualification of the jurors, it would be unreasonable to say that such interest should be kept a profound secret in every case, despite the general rules of law relating to the selection of a trial jury. The validity of a trial should not be hazarded by a possible relationship upon the theory that the plaintiff could be protected by the grant of a new trial should it appear after verdict that a juror was so disqualified.

In the motion for a new trial it is stated that counsel for the defendant admitted that United States Fidelity and Guaranty Company had issued a policy to indemnify the defendant against loss by reason of a suit such as the plaintiff had brought in the instant case. It is further recited that counsel for the defendant likewise admitted that this company had employed them in the defense of the case, and that the policy covered this particular claim for damages. Since it appeared that the indemnity company was actually conducting business in this State and had issued a policy to the defendant which as a person resided in the county in which the suit was filed, it was not improbable that the indemnity company had an agent in the county, and that this very agent was a member of the panel of twenty-four jurors. Neither could it be said that there was absolutely no reason to believe that a juror might be a stockholder or related to a stockholder. In the absence of anything to show bad faith on the part of the plaintiff or her counsel, as for

instance, actual knowledge that none of the jurors were so disqualified, the right to have the jurors purged as to such relationship was prima facie established, and a denial of this right under the circumstances constituted error. While the trial judge may have some discretion in relation to a matter of this kind, there was nothing to authorize the ruling which was made against the plaintiff in this case.

Perhaps it would be proper in cases of this character to retire the jury for the purpose of ascertaining whether an indemnity policy does in fact exist, where a preliminary investigation is necessary to determine this fact. It would further seem that where counsel for the plaintiff can not actually believe that any of the jurors might be disqualified, the court should not interrogate the jurors or permit them to be interrogated upon that question. There could be no presumption that counsel, who are sworn officers of the court, were acting in bad faith. The plaintiff had the right to rely upon the duty of the court, on proper application, to provide a competent and impartial jury, and was not required to show affirmatively that any particular juror was disqualified, in order to perfect a challenge upon this ground, as in felony cases.

Since we are of the opinion that the trial judge committed error in refusing the challenge, the question next arises as to whether the error was harmless. This court has several times stated that in order to reverse a judgment both error and injury must affirmatively appear; but there may be errors from which a presumption of injury arises, and in such a case a new trial should be granted, unless the presumption is in some way rebutted, as by an examination of the record, or by extrinsic matter such as affidavits of jurors refuting a charge of misconduct, previous expression of opinion, or the like. *Hall* v. *State,* 8 *Ga. App.* 747, 752 (70 S. E. 211) ; *Kirkland* v. *Brewton,* 32 *Ga. App.* 128 (2) (122 S. E. 814) ; *Jones* v. *State,* 148 *Ga.* 582 (2) (97 S. E. 621) ; *Wallace* v. *State,* 70 *Ga.* 722 (3). In the instant case, the error of the trial judge was presumptively harmful; and there is nothing to rebut this presumption, unless it be the affidavits submitted by the defendant for the purpose of showing that none of the jurors were disqualified. We agree with the reasoning and the conclusion of the Court of Appeals that the affidavits were insufficient for this purpose. The plaintiff had the right to examine the jurors in open court upon the question of their

qualification, where they could be permitted to testify either pro or con in relation thereto. After verdict, the jurors could not impeach their finding by showing their own disqualification, not even in reply to others who may have testified in vindication of the verdict, nor, indeed, by explaining any error or mistake which might have been made in their original affidavits, and which might have been discovered on further examination. *Bowden* v. *State,* 126 *Ga.* 578 (55 S. E. 499) ; *Hill* v. *State,* 91 *Ga.* 153 (2) (16 S. E. 976). This rule applies to disqualification on the ground of relationship. *Thompson* v. *State,* 4 *Ga. App.* 649 (5) (66 S. E. 99) ; *Bryan* v. *Moncrief Furnace Co.,* supra.

The affidavits made by the officers of the indemnity company merely showed that none of the jurors were stockholders, and did not purport to speak of any possible relationship to such stockholders. But regardless of this, it is apparent from what has been said that after verdict the plaintiff did not have the same opportunity of discovering and proving possible disqualifications which she was entitled to exercise upon the trial, the same having been seriously curtailed by the rendition of the verdict and the consequent application of the rule that jurors can not impeach their finding. It is contended by the defendant that the court did actually discharge the duty of furnishing the plaintiff "a full panel of twenty-four competent and impartial jurors from which to strike a jury." But how was this shown? There was no other way to arrive at this conclusion except by a hearing which did not meet the requirements of the law so far as the plaintiff was concerned, the source of evidence having become materially restricted from the plaintiff's standpoint, and the procedure being otherwise at variance from that which the plaintiff had the right to invoke. To state the proposition somewhat differently : If the plaintiff was entitled to have the examination as to relationship conducted in open court and before verdict while the jurors were competent to testify against as well as for their qualification, the error in denying this right was not cured by the submission of affidavits procured by the defendant out of court and after verdict, when the jurors could legally testify only one way on the question, and by offering to permit the plaintiff to make a counter-showing. This was to fall materially short of restoring what had been taken away by an erroneous ruling, and the plaintiff was not bound to accept the substitute, but could

stand aloof and maintain that the error was such as to render the further proceedings nugatory. A mere fragment of the right does not satisfy the whole.

In *Moore* v. *Farmers Mutual Ins. Asso.*, 107 *Ga.* 199 (2), 209 (33 S. E. 65), this court said: "When parties are furnished with a list of the jury, it is their duty, if they know that any of the jurors are disqualified, to call attention to the same, or the disqualification will be held to have been waived. If they have reasonable ground to suspect that any of the jurors are disqualified, it is their duty to call attention to the fact, so that due inquiry may be made of the panel. Further than this they are not required to go. Due diligence requires no more than this. The rule in reference to such matters is thus stated by Judge Stephens in *Brown* v. *State, 28 Ga.* 439: 'He must make the objection at the right time, if he knows of the fact; but if he does not know of the fact nor have special reasons to believe it, he is not bound to offend every man on the panel by making random imputations against him.' Parties are not required to make searching investigations out of court to determine whether the jurors who are summoned are disqualified in their cases. Not only is such a duty not placed by the law upon parties and their counsel, but the contrary practice is to be encouraged, for obvious reasons." If the law places no duty upon the parties to make investigations before the trial to determine whether the jurors are disqualified, they should not be required to do so afterwards, when the only purpose would be to fortify an assignment of error upon the refusal of a proper and timely challenge. The law does not require that the parties should engage in "buttonholing" the jury either before or after verdict. Such a practice would not only be unseemly, but the resulting contacts, especially before verdict, would afford occasion for the exercise of improper influences, and might have a tendency to corrupt public justice. It would be a gross perversion of justice to say that because the court has committed an error in denying a substantial right, the aggrieved party may be forced to assume a burden after verdict which did not exist before verdict, and, as to which, action on his part could never have been claimed to be necessary except for the error committed against him. Such a theory would first permit the right to be *impaired,* and then allow its total destruction solely because it was not voluntarily *re-paired* by the aggrieved party, the error not having been waived.

Accordingly, if a party has no duty to interrogate the jurors or to make other investigations as to their qualifications before the advent of the trial, he can not be compelled to do so afterwards merely because the court has erroneously denied a right of challenge. It follows that the defendant here could not after verdict force the plaintiff to join issue as to the qualifications of the jurors, nor rightly claim that the error of the court was shown harmless by the ex parte affidavits which it submitted in opposition to the motion for a new trial.

Incidentally it is noticed that among the affidavits submitted by the defendant is one from a person who deposed that he was "manager" of the Atlanta office of the indemnity company, and "as such has charge of the activities of said company in the Southeastern States," and that no officer or employee of the company was upon the panel from which this jury was selected. If the affiant was the manager of so important an office in the City of Atlanta, did the company not also have other employees in the same office, and does not this affidavit imply as much? While the affidavit was introduced as a part of the evidence to show that none of the jurors were in fact disqualified, it actually illustrates the legality and propriety of the request made by the plaintiff in this case. The error alleged to have been committed being one from which injury was presumed, and this presumption not having been rebutted in any proper manner, it can not be said that the error was harmless, and the only possible legal conclusion is that the plaintiff was entitled to a new trial.

In *McTier* v. *Crosby*, 120 *Ga.* 878 (3) (48 S. E. 355), it was held: "An assignment of error upon the refusal of the court, on motion of the defendants, to purge the jury of the relatives of the plaintiff, is not sufficient, when it does not appear, by allegation or proof, that any relative of the plaintiff was on the jury." This decision was rendered by a full bench. To the same effect, see *McCarty* v. *State*, 23 *Ga. App.* 79 (2) (97 S. E. 446); *Atlanta Cadillac Co.* v. *Manley*, 29 *Ga. App.* 522 (116 S. E. 35). In view of what has been said, these and any like cases are deemed to be not only unsound in principle, but contrary to the decisions in *Mayor &c. of Columbus* v. *Goetchius*, 7 *Ga.* 139; *Justices* v. *Griffin &c. Plank Road Co.*, 15 *Ga.* 39; *Howell* v. *Howell*, 59 *Ga.* 145; and *Holton* v. *Hendley*, 75 *Ga.* 847 (2), the first two and the last of

which were also full-bench decisions, though in the *Howell* case Judge Bleckley did not preside, having been of counsel in the case. Upon the oral argument of the present case it was announced by the Presiding Justice that this court would, if necessary, review and overrule any case or cases relating to the question under consideration which the court as a whole might deem to be unsound. Accordingly, upon review, the decision in *McTier* v. *Crosby,* supra, is now overruled so far as it relates to the question here under consideration. This statement will apply also to any other decisions by this court, so far as they may conflict with the present decision. The decisions by the Court of Appeals to which we have last referred and any others of like import are disapproved.

The decisions in *Carter* v. *State,* 106 *Ga.* 372 (6) (32 S. E. 345, 71 Am. St. R. 262), and *Dees* v. *State,* 41 *Ga. App.* 321 (15 S. E. 913), contain rulings in almost the same language as that to be found in *McTier* v. *Crosby,* but the *Carter* and *Dees* cases were not misdemeanor cases, the defendant in each case being charged with a felony; and, as we have seen above, a different rule for the selection of a jury applies in felony cases from that which obtains in civil and misdemeanor cases. The Penal Code, § 858, expressly provides that in civil and misdemeanor cases each party may demand a full panel of twenty-four "competent and impartial jurors from which to strike a jury." The question as to the competency and impartiality of the jurors is thus to be determined *before the parties begin to strike a jury.* Section 862 provides that in felony cases "the court shall have impaneled forty-eight jurors" from whom to select the jury. This section does not declare that the court shall have *impaneled* forty-eight *competent and impartial* jurors as in civil and misdemeanor cases, because in felony cases, as is provided by the Penal Code, § 999, the question of the competency and impartiality of the jurors is one to be determined *after* the process of selecting the jury has been commenced. *Whitworth* v. *State,* supra; *Chewning* v. *State,* 18 *Ga. App.* 11 (88 S. E. 904). It is provided in section 999 in effect that, on calling each juror "he shall be presented to the accused in such a manner that he can distinctly see him, and then the State; or the accused, may make," among others, the objection that the juror is so near of kin to the prosecutor, or the accused, or the deceased, as to disqualify him by law from serving on the jury, and that it shall be the duty of the

court to hear immediately such evidence as may be submitted (the juror being a competent witness) in relation to the truth of these objections; and if he shall be satisfied of the truth of either, the juror shall be set aside for cause." It thus appears that the accused is required to make specific objection to a juror upon the ground of relationship, and the statute does not place a duty upon the trial judge to make previous inquiry, either on request or otherwise, upon that question. While this is frequently done by the courts, and is doubtless a salutary practice, it is not a right which is given by law to the defendant; and hence the refusal to make such inquiry can not violate any right which is conferred upon the defendant by law. Accordingly, if a request for such inquiry should be made and overruled, there could be no presumption of injury from such ruling, because no legal right of the defendant had been infringed; and in such case the defendant could have no complaint against the verdict unless it appeared that one or more of the jurors were actually disqualified. In felony cases, therefore, it is the disqualification itself, and not the refusal to make inquiry, which will vitiate the trial. It is true, however, as in civil and misdemeanor cases, that a defendant in a felony case is not required to make previous investigations out of court to determine whether the jurors are disqualified, the rule stated in *Moore* v. *Farmers Mutual Ins. Asso.,* supra, having been taken largely from the decision in *Brown* v. *State,* 28 *Ga.* 439, which was a felony case; and relationship within the prohibited degree will furnish ground for a new trial where it was unknown and there was no reasonable cause to suspect it before verdict. See also *Jordan* v. *State,* 119 *Ga.* 443 (4) (46 S. E. 679); *Wall* v. *State,* 126 *Ga.* 549 (3) (55 S. E. 484); *Perrett* v. *State,* 16 *Ga. App.* 587 (85 S. E. 820).

From what has been said, the *Carter* and *Dees* cases appear to be correct and not "out of line," as suggested by the Court of Appeals, being distinguished from *McTier* v. *Crosby* and other cases of the same class to which reference has been made. The record in the case of *McTier* v. *Crosby* shows that the suit was brought on a bond payable to the ordinary in his official capacity for the use of another person and that the defendant "asked that the relatives of the ordinary be taken off the jury." Seemingly the relatives of the ordinary would not have been disqualified; and if not, the judgment in that case was correct though based upon an erroneous ground. This,

however, can only be ascertained by an examination of the record; and the ruling as made is unsound and misleading as a precedent, in that it applies in a civil case a rule which can be correctly applied only in felony cases.

*Judgment affirmed.    All the Justices and Judges concur.*

ON MOTION FOR REHEARING AND TO VACATE.

BELL, J.   The Atlanta Coach Company, the plaintiff in certiorari, has filed three motions complaining of the decision and judgment rendered by this court on certiorari.   In one of these motions it is prayed that the decision and judgment be vacated and set aside as having been rendered by an illegally constituted court, while the others merely ask for a rehearing, one of the latter motions being predicated in part upon the same grounds as the motion to vacate.

It is insisted that, because of certain irregularities relating to the authority and qualification of those presiding, the court was not legally composed of a full bench of six members, so as to be authorized to overrule the decision in *McTier* v. *Crosby,* supra, as was done on the decision now complained of.   This case came to this court on a petition for certiorari.   Before the petition was considered, to wit, on April 15, 1933, an order was passed reciting that three members of the court were disqualified to preside in the case, and requesting the Governor to designate three judges of the superior courts to preside upon the consideration of the petition for certiorari, "and thereafter to preside upon the argument," in the event the writ of certiorari should be granted.   Those deemed to be disqualified were Chief Justice Russell, and Associate Justices Atkinson and Hill, although the order did not state the names of any of the Justices.   In compliance with this order and request, the Governor designated the following judges of superior courts to preside in lieu of the disqualified Justices: Hon. Virlyn B. Moore, of the Atlanta Circuit; Hon. Ben. P. Gaillard Jr., of the Northeastern Circuit; Hon. C. W. Worrill, of the Pataula Circuit.   Thereafter it developed that Judge Gaillard would be unable to preside at the time appointed, and the Governor passed an order reciting this fact and designating Hon. J. H. Hawkins, judge of the Blue Ridge Circuit.   All of the orders above referred to are matters of record in this court, and copies of all of them are set forth in one of the motions now under consideration.   Judges Worrill, Moore, and Hawkins presided with qualified Justices of the Supreme Court

upon the consideration of the petition for certiorari, when the petition was sanctioned and the writ ordered to issue. The same judges also presided with qualified Justices upon the argument which followed in due course. Immediately after the argument some question arose as to whether any of the Justices were really disqualified, and counsel on both sides were recalled for statements on this question. Thereafter, Associate Justices Atkinson and Hill continued to maintain that they were disqualified, while Chief Justice Russell took a different view as to his own qualification and concluded to participate. No conclusions were then and there announced by the Justices in regard to their qualification, but it was made known to counsel that the question of qualification would be taken under advisement. Counsel for plaintiff in certiorari acquiesced in this procedure, and indicated that no point would be made upon the final conclusion of any of these Justices in regard to their qualification. We do not understand that counsel are now disposed to assume a different position in relation to this matter. Compare *Buena Vista Loan & Savings Bank* v. *Grier*, 114 *Ga.* 398 (40 S. E. 284); *Shuford* v. *Shuford*, 141 *Ga.* 407 (3) (81 S. E. 115); 33 C. J. 1012, § 177.

When the Chief Justice concluded to hold himself qualified, Judge Moore voluntarily retired, leaving the court composed of the Chief Justice together with Presiding Justice Beck, Associate Justices Gilbert and Bell, and Judges Worrill and Hawkins. The court was thus duly composed of a full bench of six members, unless there was a defect in relation to one or both of the superior court judges who presided. It is insisted that Judge Moore, having been designated to preside and having heard the argument, should have remained as a member of this court until "properly relieved by appropriate order, which does not appear to have been issued;" and if we do not mistake counsel's position, it is claimed that since Judge Moore was designated prior to the designation of Judge Hawkins, the former and not the latter should have presided, when it became apparent that only two judges of the superior court were necessary to fill the bench. There is no merit in this contention. Three judges having been designated on the theory that three Justices, including the Chief Justice, were disqualified, it could make no difference which of the judges retired upon the subsequent action of the Chief Justice holding himself qualified. It is not contended

that the case should have been opened for reargument. But see *Smith* v. *DuBose,* 78 *Ga.* 413 (5) (3 S. E. 309, 6 Am. St. R. 260); *Hardin* v. *Lovelace,* 79 *Ga.* 209 (5 S. E. 493).

But after the submission of the case and before its decision Associate Justice Hill departed this life and was succeeded by Hon. John B. Hutcheson. In view of these facts it is contended that Justice Hutcheson should have assumed jurisdiction in place of one of the judges of the superior court designated by the Governor. We can not agree to this contention. Justice Hutcheson correctly refrained from asserting jurisdiction to the exclusion of one of the judges of the superior court who was designated to preside in place of Justice Hill disqualified, and who had assumed jurisdiction and heard argument before the appointment and commission of Justice Hutcheson as the successor to Justice Hill. A similar question was presented in *Clayton* v. *Wallace,* 41 *Ga.* 268, in which this court held that a pro tempore judge of the superior court selected according to law to preside in a particular case has authority to hear "a motion for a new trial in the case heard and tried before him as such pro tempore judge, although the presiding judge of the circuit may have resigned his office before the hearing of that motion; the hearing and deciding the motion for a new trial is a part of the trial of *that case.*" It was further said in that decision that "such pro tempore judge derives his authority to hear and determine that special case from the public law of the State, and not from the presiding judge of the circuit; and having acquired jurisdiction to hear and determine the case under the public law of the State, his functions as such pro tempore judge continue until he shall have heard and decided the motion for a new trial in that case, notwithstanding the presiding judge of the circuit may have resigned his office before the hearing of that motion." Upon like principle the successor to Justice Hill could not properly have ousted the jurisdiction of a judge of the superior court who had duly entered upon a consideration of the case. See further, in this connection, *Glover* v. *Morris,* 122 *Ga.* 768 (50 S. E. 956); *Gainesville Buggy Co.* v. *Morrow,* 23 *Ga. App.* 268 (98 S. E. 100); *Roberts* v. *Bank of La-Grange,* 23 *Ga. App.* 660 (99 S. E. 145); Glover *v.* Albrecht (Tex. Civ. App.), 173 S. W. 504; Lowe *v.* State (Tex. Cr. App.), 201 S. W. 986; Citizens National Bank *v.* Graham (Mo.), 48 S. W. 910; Woodsmall *v.* State, 181 Ind. 613 (105 N. E. 155, 899).

Where several members of this court are disqualified, we do not think it necessary that the Governor's order should specify that any particular judge should fill the vacancy of any particular Justice by name, provided a sufficient number of superior-court judges are designated to preside in lieu of the several disqualified Justices. Civil Code (1910), §§ 6108, 6242. In view of what has been said, we can not agree that the decision in *McTier* v. *Crosby* was not reviewed and overruled by a full bench of six members, as prescribed by law.

Counsel for the plaintiff in certiorari have also reargued the question of the soundness of the decision in *McTier* v. *Crosby*. We have carefully considered the further reasoning of counsel upon this question, together with the additional authorities cited, but discover no sufficient ground for a change of opinion in regard to that decision.

■ It is insisted that the motion made by counsel for the plaintiff in the trial court to purge the panel of jurors of "any and all persons who were employees of, stockholders in, or related to employees of or stockholders in United States Fidelity and Guaranty Company," was improper and illegal, for the reason that jurors would not be disqualified by relationship to employees; and that since the motion was to this extent broader than the law would authorize, it was proper for the trial judge to overrule the motion in its entirety. There is no merit in this contention, for the simple reason that the decision and judgment of the Court of Appeals was not assigned as error upon this ground. The case is here upon the grant of a certiorari, and under Rule 2, relating to this subject, the petition must plainly specify the decision complained of and the alleged error. It is not "sufficient to set out the contentions and assignments of error made in the original bill of exceptions or motion for a new trial, but it shall be necessary to plainly and specifically set forth the errors alleged to have been committed by the Court of Appeals." 28 *Ga. App.* 820. In the petition for certiorari under consideration, the decision of the Court of Appeals was attacked for unsoundness as a matter of principle, and it contained no suggestion that the judgment of the trial court should have been affirmed for the reason indicated in the motion for rehearing.

It is also contended in one of the motions for rehearing that the Court of Appeals did not have before it such an assignment of error

as would have authorized the decision rendered by that court. Neither was this question raised in the petition for certiorari, and it can not be considered by this court where it is presented for the first time by motion for rehearing. It follows from what has been said that each of the motions under consideration should be denied. In connection with the judgment as now rendered thereon, see *Greene County* v. *Wright,* 127 *Ga.* 150 (56 S. E. 288).

*Motions denied. Russell, C. J., Beck, P. J., and Bell and Hawkins, JJ., concur. Gilbert and Worrill, JJ., absent.*