**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 15, 2016**

# In the Court of Appeals of Georgia

A16A0852. MORDECAI et al. v. CAIN.                    JE-032

ELLINGTON, Presiding Judge.

A Cobb County jury returned a plaintiff's verdict in this motor vehicle collision case brought by Barbara Mordecai against Michael Cain.[1] Mordecai appeals, contending that the trial court erred in failing to qualify the prospective jurors with regard to State Farm Mutual Automobile Insurance Company, her uninsured motorist coverage carrier, and in excluding evidence that Cain pled guilty to driving on the wrong side of the road.[2] For the reasons explained below, we reverse.

---

[1] In addition, Mordecai's husband, William Mordecai, asserted a claim for loss of consortium. The jury returned a verdict in favor of William Mordecai on his derivative claim. He also appeals and joins in his wife's arguments.

[2] State Farm, as Mordecai's uninsured motorist carrier, elected to try this case in the name of the individual defendant, Michael Cain.

1. Mordecai contends that the trial court erred in denying her request to have prospective jurors qualified in the courtroom during voir dire with regard to State Farm, her uninsured motorist insurance carrier.

The records shows the following. On May 18, 2015, Cain and State Farm moved in limine to "[e]xclud[e] any questioning in Voir Dire by counsel concerning insurance unless the prospective jurors have stated, in response to an inquiry concerning current employment, that they presently work for an insurance company." Later that day, the parties filed a proposed consolidated pretrial order. Paragraph 4 of the pretrial order reads as follows: "The jury will be qualified as to relationship with the following:[3] William Mordecai, Barbara S. Mordecai, Michael Anthony Cain and . . . officers, directors, employees or policy holders of . . . State Farm . . . to determine if any juror is related by consanguinity (blood) or affinity (marriage) within the sixth degree according to the civil law. The jurors should also be qualified as to such relationship with the following attorneys and witnesses" listed there. Paragraph 4 then indicates that Cain and State Farm "object[ed] to the jury being qualified as to . . . State Farm as [it has] no financial interest in the case." Cain and State Farm

---

[3] This tracks the form civil pretrial order provided in the uniform court rules. See Uniform Superior Court Rule 7.2 ("(4) The jury will be qualified as to relationship with the following: __.")

requested that, if the court elected to qualify the prospective jurors concerning insurance, qualification occur "outside the courtroom and in the jury assembly area prior to trial." In the same paragraph of the consolidated pretrial order, Paragraph 4, Mordecai asserted that because "this is an uninsured motorist case . . . State Farm clearly has a financial interest in the case." In addition, Mordecai asserted, "[a]s to State Farm . . . , the jury should be qualified as to whether any juror is an officer, director, employee [or] policyholder. The jury should be qualified in the courtroom, not the jury assembly room, so counsel can explore their answers." (Citation omitted.)

At the beginning of the trial on July 27, 2015, the trial court first took up the motion in limine. The judge informed counsel that, "with respect to . . . the insurance, this is the question that was asked" by the jury assembly administrator to all prospective jurors in the jury assembly room: "Are you an officer, employee, stockholder, agent, director, or policyholder of State Farm Automobile Mutual Insurance?" Mordecai's counsel asked about following up on affirmative answers. The judge responded, "I have not been advised that anyone answered yes[ ] to that question." The judge then took up certain evidentiary matters in the pretrial order.

Next, the court turned to jury selection and asked counsel to identify the persons and entities about which they wished the court to ask the prospective jurors

3

qualifying questions. After listing the parties, their attorneys, and two non-party witnesses, the judge continued "[o]fficers, directors, employees or policyholders of the State Farm – State Farm has been done. I can do it again. . . . I don't know why I would need to, but I'll be glad to hear from [Mordecai's counsel], if you need to." Mordecai's counsel responded, "If there are no people that are officers of State Farm, we don't need to go any further than that." The judge summarized that he would qualify the jury as to Mordecai, her husband, Cain, the attorneys and law firms, and the witnesses.

The trial court called for a panel of 27 prospective jurors to be brought to the courtroom and posed qualifying questions, asking if any were related to the parties, their attorneys, and the witnesses. None of the prospective jurors responded positively, and the trial court moved on to voir dire examination of the prospective jurors by counsel.

After the voir dire examination, and before beginning jury selection, the judge called counsel to the bench. Mordecai's counsel "asked that the panel be qualified as to State Farm," and Cain's counsel "objected on the grounds the jurors had been qualified as to State Farm . . . in the jury assembly area." The trial court "denied [Mordecai's] request to qualify the prospective jurors as to State Farm . . . in the

courtroom, but agreed to have the jury assembly administrator explain how the panel was qualified as to State Farm . . . in the jury assembly area."[4] Next, the trial court directed counsel to exercise peremptory strikes to select 12 jurors. The trial court administered the oath, empaneling the jury. Opening statements followed, and the trial court directed Mordecai's counsel to call his first witness.

After Mordecai's husband testified, and when the jury was outside the courtroom, the trial court summoned to the courtroom the jury assembly administrator, who had polled the prospective jurors in the jury assembly room. The court asked the administrator on the record what question she had asked in the jury assembly room about State Farm. She replied, as the trial court had already informed counsel at the pretrial hearing, that she read the following to the entire group: "Are you an officer, employee, stockholder, agent, director or policyholder of State Farm Automobile Mutual Insurance Holding?" She said that every prospective juror who answered "yes" was excluded from the panel that was sent to the courtroom for voir dire in Mordecai's case. The court asked Mordecai's counsel if his inquiry was satisfied. Mordecai's counsel responded, "It satisfied my inquiry. I'm not sure that

---

[4] We note that the bench conference was not transcribed. The parties supplemented the transcript with a stipulation regarding the substance of the colloquy and ruling.

satisfies the law. I think they have to be questioned in the courtroom." The jury was then brought back into the courtroom and the trial continued.

In response to Mordecai's appellate argument, Cain contends that the trial court qualified the prospective jurors as to State Farm through the procedure of having the jury assembly administrator pose the question to them in the jury assembly room and that the trial judge was not required to personally qualify the prospective jurors a second time in the courtroom. In addition, Cain contends that, because Mordecai's counsel did not renew his objection to the selected jury after the jury assembly administrator's appearance in court, she waived any disqualification objection she may have had. He argues that Mordecai's "decision to seat a jury and allow the trial to proceed[,] without the issues concerning jury qualifications resolving, constitutes a waiver of the right to challenge their qualification[,] and it is conclusively presumed that no harm resulted." (Citation omitted.) We disagree.

> It is the longstanding rule in Georgia that, to ensure the right of trial by an impartial jury, a party to a civil case is entitled to have the jury qualified by the court as to any insurance carrier with a financial interest in the case. It is an equally longstanding Georgia rule that where a civil jury was not properly qualified in this way, and where the party seeking such qualification has properly preserved the issue for review, prejudice

6

to that party will be presumed, and in the absence of proper rebuttal, a
new trial must be ordered.

(Citations omitted.) *Ford Motor Co. v. Conley*, 294 Ga. 530, 550 (3) (b) (757 SE2d
20) (2014).[5]

Qualifying each prospective juror as to a possible relationship with a nonparty
liability insurer that has an interest in the outcome of the case must be done "before
the parties begin to strike a jury[,]" because the parties have "the right to a panel of
impartial [prospective] jurors from which to select the trial jury." (Punctuation and
footnotes omitted.) *Lewis v. Emory Univ.*, 235 Ga. App. 811, 813-814 (1) (509 SE2d
635) (1998). See also *Atlanta Coach Co. v. Cobb*, 178 Ga. 544, 555 (174 SE 131)
(1934) (accord).

---

[5] See also *Atlanta Coach Co. v. Cobb*, 178 Ga. 544, 549-552 (174 SE 131)
(1934) (accord); OCGA § 15-12-135 (disqualification of jurors based on a
relationship to a party or an interest in the case); *Reese v. Ford Motor Co.*, 320 Ga.
App. 78, 80, n. 2 (738 SE2d 301) (2013) ("In Georgia, the right to an impartial jury
mandates that the jury be qualified as to any insurers with a financial interest in the
case.") (citation omitted); Frank E. Jenkins III et al., Ga. Automobile Ins. Law § 10:5
(2015-2016 ed.) ("[I]t is imperative under Georgia law that a trial court qualify each
prospective juror as to a possible relationship with a nonparty liability insurer which
has an interest in the outcome of the case. In fact, the rule is so well ingrained in the
law that failure to qualify the jury upon request by counsel demands a new trial. . . .
Thus, the trial court is charged with the responsibility to qualify the jury as to those
companies which insure a party against whom damages are potentially recoverable
in the action.") (footnote omitted).

In addition, qualifying each prospective juror as to insurers if requested must be done in open court in the presence of the parties (and counsel), because a party has the right to examine prospective jurors upon the questions of their qualification, including questions regarding disqualifying ties to insurance companies. *Ford Motor Co. v. Conley*, 294 Ga. at 550-551 (3) (b); *Atlanta Coach Co. v. Cobb*, 178 Ga. at 552. See also *Lewis v. Emory Univ.*, 235 Ga. App. at 813-814 (1) (a party is entitled to have prospective jurors examined by counsel). Cain argues that "Georgia Courts have made clear that the decision of when and where to qualify the prospective jurors is in the sound discretion of the presiding judge." Cain cites to two cases from this Court which discuss in dicta the concern that questioning prospective jurors as to potentially disqualifying relationships with insurers improperly informs them that the interest of an insurance company is at stake, which is irrelevant to the issues before them: *Patterson v. Lauderback*, 211 Ga. App. 891, 895-896, n. 2 (3) (440 SE2d 673) (1994), overruled on other grounds by *Warren v. Ballard*, 266 Ga. 408 (467 SE2d 891) (1996), and *Franklin v. Tackett*, 209 Ga. App. 448, 450-455 (433 SE2d 710) (1993), Beasley, J., concurring specially. In *Patterson v. Lauderback*, we suggested that one "practical solution[ ] to the problem . . . is to utilize the written juror questionnaires now commonly in use to discover such disqualifications rather than

8

doing so orally in the presence of all jurors." *Patterson v. Lauderback*, 211 Ga. App. at 895-896, n. 2 (3). In *Atlanta Coach Co. v. Cobb*, however, the Supreme Court of Georgia addressed "*the right to examine the jurors in open court upon the question of their qualification*, where they could be permitted to testify either pro or con in relation thereto." (Emphasis supplied.) 178 Ga. at 552. Although the Supreme Court has not directly been presented with the issue "whether there is any way to adequately qualify jurors in civil cases as to a defendant's potentially liable insurers short of directly asking the jurors about relationships with the particular insurance companies at issue[,]"[6] the Supreme Court recently recognized *Atlanta Coach Co. v. Cobb* as the seminal case in Georgia regarding jury qualification as to a defendant's insurance carriers and found "no compelling reason" to now change the law established therein. *Ford Motor Co. v. Conley*, 294 Ga. at 556 (3) (b) (3). Accordingly, we conclude that existing precedent establishes that, when a party requests that qualification of prospective jurors be done during voir dire and in open court, the trial court's discretion when and where to qualify them is, in fact, limited. That is, although so-

---

[6] *Ford Motor Co. v. Conley*, 294 Ga. at 555 (3) (b) (3).

called "prequalification"[7] may be permitted, a party who asks that qualification of prospective jurors be done during voir dire and in open court is entitled to that procedure, regardless whether prospective jurors are prequalified by a court employee before they are sent to the courtroom. In this case, Mordecai specifically requested before trial that the judge question the prospective jurors, in the courtroom and in the presence of counsel, about disqualifying relationships with State Farm by so stating in the paragraph designated in the standard form pretrial order for jury qualification issues. See id. at 556 (4) (The requirement in the trial court rules that each party "file a proposed pretrial order in which the party must, among other things, complete the statement: 'The jury will be qualified as to relationship with the following: __' . . . allows a party to list all of the individuals and entities, including insurers, that the party wants the court to consider in qualifying the jury[.]").

A trial court's failure to qualify prospective jurors with regard to a particular relationship may be waived by a party's failure to object when the trial court omits the question at trial.[8] In this case, Mordecai specifically requested before trial that the

---

[7] See *Park v. Nichols*, 307 Ga. App. 841, 842 (706 SE2d 698) (2011); *Patterson v. Lauderback*, 211 Ga. App. at 895-896, n. 2 (3).

[8] *Citizens & Southern Nat. Bank v. Haskins*, 254 Ga. 131, 138 (5) (327 SE2d 192) (1985). See also *Ford Motor Co. v. Conley*, 294 Ga. at 553 (3) (b) (2) ("The

trial court qualify prospective jurors as to State Farm in the courtroom and asserted her right to have counsel explore their answers. As Cain has expressly stipulated, after the trial judge posed qualification questions to the prospective jurors, omitting the question about State Farm, and before jury selection, Mordecai repeated her request that the prospective jurors be qualified as to State Farm in the courtroom, Cain objected, and the trial court denied the request. We conclude that this was sufficient under the circumstances to preserve for appellate review the trial court's error in failing to qualify the prospective jurors as Mordecai requested. Cain's argument that Mordecai willingly decided to proceed with seating the jury and trying the case with the issue concerning jury qualifications unresolved is defeated by the parties' stipulation. The issue was resolved when the trial court denied Mordecai's request and directed counsel to select the jury. Furthermore, we find no basis for concluding that the trial court's action of summoning the jury assembly administrator to the courtroom in the middle of Mordecai's case-in-chief to have her describe what

disqualification of a juror may be expressly or impliedly waived by a party having cause to complain, and[,] if expressly or impliedly waived, it is conclusively presumed that no harm or benefit to either party resulted from the disqualification, and[,] where it appears that the party having cause to complain either knew of the relationship or could have discovered it by the timely exercise of ordinary diligence[ ] and remained silent, that party will be presumed to have waived the disqualification.") (citations and punctuation omitted).

11

had transpired in the jury assembly room triggered any requirement that Mordecai renew her request that the prospective jurors be properly qualified. This would be nonsensical, given that the trial court had declared all 27 prospective jurors qualified, 12 of them had been selected, sworn, and impaneled, and the remaining 15 released. See *Lewis v. Emory Univ.*, 235 Ga. App. at 813-814 (1). Absent any requirement that Mordecai at that time renew her objection to the trial court's error, we conclude that her counsel's somewhat equivocal statement, "I'm not sure that satisfies the law. I think they have to be questioned in the courtroom[,]" did not operate to waive the error.

The trial court's failure to qualify the jury as requested by counsel entitles Mordecai to a new trial. *Ford Motor Co. v. Conley*, 294 Ga. at 556 (3) (c); *Atlanta Coach Co. v. Cobb*, 178 Ga. at 554. Accordingly, the judgment is reversed.

We will address any remaining claims of error that bear on evidentiary matters likely to recur at any subsequent retrial of the case. See *Toler v. Georgia Dept. of Transp.*, 328 Ga. App. 144, 149 (1) (761 SE2d 550) (2014).

2. Mordecai contends that the trial court erred in denying her request to introduce a certified copy of Cain's bond forfeiture to the charge of driving on the

12

wrong side of the road[9] as evidence that he entered a guilty plea to that charge. In a related claim of error, Mordecai contends the trial court improperly directed defense counsel to instruct Cain to change his trial testimony. "The decision to admit or exclude evidence is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." (Citation and punctuation omitted.) *Trotman v. Velociteach Project Mgmt.*, 311 Ga. App. 208, 215 (8) (715 SE2d 449) (2011).

In this case, the record shows that before trial Cain stipulated that he was driving in the wrong direction and collided head-on into Mordecai's vehicle and that he was negligent in causing the wreck, that is, that he owed Mordecai a duty of care and that he breached that duty in the manner alleged. Cain moved in limine to exclude "any evidence as to the timing of [his] admission that he caused the accident." Before trial, the trial court granted the motion on the basis that, because Cain had stipulated that he owed Mordecai a duty and breached that duty, the timing of his admission was irrelevant.

At trial, Mordecai's counsel asked Cain whether he acknowledged that he had crossed the center line, and Cain responded that he had no recollection of the event.

---

[9] See OCGA § 40-6-40.

13

Mordecai's counsel asked to approach the bench. The court had the jury removed from the courtroom and told Cain's counsel that either Cain could acknowledge being at fault or the court would allow Mordecai to introduce evidence of his guilty plea, which had previously been excluded. The court then asked Cain's counsel if he wanted to talk with Cain, and counsel said, "yes." Defense counsel conferred with his client and informed the court that Cain understood that his testimony was inconsistent with the legal position he had taken in obtaining the limine ruling, that he acknowledged his fault, and that he would correct his testimony when the trial resumed. The judge emphasized that he was not instructing Mordecai's counsel to ask any particular questions. When the trial resumed, Cain recanted his immediately preceding testimony that he did not remember the accident and testified that he did recall crossing the center line.

Mordecai contends that evidence that Cain admitted guilt to the offense of driving on the wrong side of the road by forfeiting his bond would have refuted his testimony that he did not recall the accident and that, when Cain testified he did not recall the accident, "[his] testimony about the accident became so conflicting that [she] renewed [her] request to present evidence of his guilty plea[.]" Mordecai asserts that the court "instructed Cain's attorney to counsel his client to change his

14

testimony" or the court would allow her to introduce evidence of his guilty plea. She argues that "the failure to allow evidence of such admission" denied her "the opportunity to impeach [Cain] on this issue" and "denied [her] a full and thorough cross examination of the adverse party."

We conclude, however, that the trial court was authorized to find, after Cain admitted crossing the center line and retracted his testimony that he did not remember doing so, that introduction of his bond forfeiture would have been cumulative of his stipulation of negligence and of his admission in judicio that he negligently drove in the wrong direction and caused the collision. Accordingly, the trial court did not abuse its discretion in excluding evidence of his bond forfeiture. *Mitchell v. Gay*, 111 Ga. App. 867, 873 (6) (143 SE2d 568) (1965) ("There is no reversible error in excluding evidence offered to prove a fact which is admitted or fully established by other evidence.") (citations omitted).

In addition, Mordecai's assertion that the trial improperly "directed" defense counsel to instruct Cain to change his trial testimony is not supported by the record. The record shows instead that the trial court cautioned defense counsel that, if the evidentiary basis for the court's limine ruling changed, the trial court would revisit that ruling regarding the admissibility of his bond forfeiture, as it had the power to

15

do.[10] We find no error in the giving of this caution or in giving defense counsel the opportunity to speak with his client before proceeding.[11]

*Judgment reversed. Mercier, J., concurs. Branch, J., concurs in judgment only in Division 1, and fully in Division 2.*

---

[10] See Paul S. Milich, Ga. Rules of Evidence, § 3:6 (database updated October 2015) ("The trial judge may always reconsider and change a ruling made in a pre-trial hearing. As a trial progresses, it may reveal additional facts or raise new concerns that were not visible when the judge ruled before trial. Counsel should ask the court to reconsider its initial ruling in light of the new factors.") (footnote omitted); *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285-286 (1) (260 SE2d 20) (1979) (A ruling on a motion in limine controls the subsequent course of the action, unless modified at trial to prevent manifest injustice.); *Thomas v. State*, 287 Ga. App. 124, 124-125 (650 SE2d 793) (2007) (A motion in limine ruling is not a final judgment, and the trial court can modify its ruling at trial.); *Jakobsen v. Colonial Pipeline Co.*, 237 Ga. App. 441, 446 (3) (514 SE2d 851) (1999) (A trial court can modify a ruling on a motion in limine during trial.) (physical precedent only).

[11] See *Turner v. Wilmouth*, 161 Ga. App. 2, 4 (4) (288 SE2d 839) (1982) ("The trial court has the right and the obligation to ask questions, restrict examination, and otherwise control the course of the proceedings in order to insure the truth is given to the jury in orderly fashion. In the absence of abuse, we will not interfere with the exercise of that discretion.") (citation and punctuation omitted); see also *Campbell v. State*, 248 Ga. App. 162, 165 (2) (545 SE2d 6) (2001) (accord).

16