**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A1156. MENDOZA v. PHILLIPS et al.

A25A1157. PHILLIPS et al. v. MENDOZA.

BARNES, Presiding Judge.

This appeal and cross-appeal arise from a wrongful death claim which resulted in a jury verdict and judgment for $80,270,058.63 in favor of Courtland Greene Phillips, as administrator of the estate of Gail Pritchard, against Marite Mendoza. Asserting as error the denial of her motion for new trial, in Case No. A25A1156 Mendoza contends that the trial court improperly excluded evidence of Pritchard's substance abuse and also refused to excuse jurors who were qualified twice as to their relationship with Mendoza's insurer. In Case No. A25A1157, Phillips appeals the denial of his partial motion for new trial and contends that the trial court erred in the denial of his partial motion for summary judgment on his OCGA § 13-6-11 claim for

attorneys fees and also challenges comments made during closing argument by defense counsel. For the reasons that follow, we affim.

"This Court reviews the judgment entered by the trial court after approval of a jury verdict upon the any evidence test, absent any material error of law. Additionally, when a question of law is at issue, we owe no deference to the trial court's ruling and apply a de novo standard of review." *Health Svcs. of Central Ga., Inc. v. Wanna*, 373 Ga. App. 642, 643 (908 SE2d 41) (2024) (punctuation omitted).

After her moped collided with Mendoza's car in 2016, Pritchard suffered a spinal cord injury which resulted in her becoming a quadriplegic. Mendoza was cited for failure to yield,[1] and Pritchard sued Mendoza for negligence in Fulton County State Court. The case was transferred to Cobb County State Court where Mendoza also filed a motion to enforce a settlement agreement between her insurance company and Pritchard. The trial court granted the motion, and Pritchard appealed the order to this Court. We concluded that the parties had not reached a binding settlement

---

[1] See OCGA § 40-6-71 ("The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.").

agreement and reversed. See *Pritchard v. Mendoza*, 357 Ga. App. 283, 289 (850 SE2d 472) (2020) ("[T]he release in this case was not identical with the terms of the offer, nor was it unvarying from the precise terms of the offer. Therefore, Progressive did not perform an act that was required for acceptance of Pritchard's offer, and the parties did not reach a binding settlement agreement.") (citation and punctuation omitted).

In 2019, during the pendency of the appeal, Pritchard passed away and Phillips, the administrator of Pritchard's estate, substituted himself as plaintiff and amended the complaint to assert on behalf of the estate and Pritchard's next of kin a wrongful death claim, as well as claims for punitive damages pursuant to OCGA § 51-12-5.1 and expenses of litigation under OCGA § 13-6-11. Thereafter, Mendoza filed a motion for partial summary judgment on the punitive damages and expenses of litigation claims, and The trial court granted Mendoza's partial summary judgment motion on both claims. As to the OCGA § 13-6-11 attorneys' fees claim, the trial court concluded that Mendoza's actions did not demonstrate bad faith and that the existence of a bona fide controversy precluded a finding that Mendoza was stubbornly litigious or had caused unnecessary trouble or expense. The trial court also concluded that punitive damages

were not appropriate because notwithstanding Mendoza's alleged negligence, "there is no evidence of 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" The case proceeded to trial with the jury returning a verdict for Phillips and damages of $30,000,000 for the value of her life, $35,000,000 for pain and suffering, and $887,297.88 in special damages for medical and funeral expenses. Subsequent to the verdict, Phillips moved for attorneys' fees and expenses under OCGA § 9-11-68 (e) on the ground that Mendoza had pursued a frivolous defense. The trial court bifurcated the issue of attorneys' fees and following that phase of the trial, the jury found that Phillips was not entitled to attorneys' fees and expenses pursuant to OCGA § 9-11-68 (e). The trial court entered a judgment therefrom which included prejudgment interest in the amount of $14,382,465.75 and court costs of $295.00.

Case No. A25A1156

1. Mendoza contends that the trial court's exclusion of the evidence of Pritchard's substance abuse prevented her from presenting her best and only rebuttal evidence to Phillips' value-of-life evidence. Mendoza argues that a wrongful death suit

4

puts at issue Pritchard's character, habits, health and overall enjoyment of life, "the good and bad." Mendoza alleges that Phillips only put up evidence of intangible components of compensable damages that painted a rosy picture of Pritchard's life and "the best evidence to impeach this central [tenet] of Phillips' case was Pritchard's history of substance abuse."

Phillips filed a motion in limine to exclude any evidence of Prichard's alleged substance abuse, including medical records and testimony. Phillips argued for the exclusion of the evidence noting the potential for unfair prejudice as "there [was] no evidence that drugs or alcohol negatively impacted [Pritchard's] health or had any impact to her death or life expectancy." He also pointed to the lack of evidence that she was under the influence of drugs at the time of the collision, including any testimony from medical personnel or first responders about any appearance of intoxication.

Mendoza opposed the motion to exclude the evidence and argued that the evidence was relevant to the jury's determination of her life expectancy and thus material to the award of damages in the case. Moreover, she also argued that the "significant probative value" of the evidence was not outweighed by any unfair

prejudice, and that Phillips had made no showing of such prejudice. Mendoza noted Pritchard's medical records only showed that at some point in 2014 she had been diagnosed with "polysubstance dependence" and also deposition testimony from one of Pritchard's treating doctors who testified that during Pritchard's care, a blood test returned "presumptive positive" results for specific substances, including cocaine, Methadone, Benzodiazepines, and THC. Following a hearing on the motion, the trial court denied Phillips' motion and concluded that the evidence was

> more probative than prejudicial after a Rule 403 analysis. The evidence is relevant to damages. ... Although there is not specific evidence of duration [of substance abuse], there are medical records documenting a chronic polysubstance abuse diagnosis which include some of the same drugs that were "presumptively positive" during her drug screen on the date of this incident.

Phillips filed a motion for reconsideration in which he again maintained that the unfair prejudice of the evidence outweighed any probative value and to which he attached the treating doctor's affidavit who averred to "have no opinions, expert or otherwise, regarding [Pritchard's] alleged illicit drug use or life expectancy or whether

alleged drug use affected [Pritchard's] life expectancy in any way."[2] The doctor further clarified that he had no "training or experience that would allow me to give expert opinion about how illicit drug use might or might not affect … life expectancy." Following a hearing on the motion for reconsideration, and finding that there was a lack of expert testimony about the impact of drug use on Pritchard's life expectancy, the trial court reversed its earlier ruling and granted Phillips' motion in limine to exclude the evidence. The court concluded that "the evidence of drug usage is irrelevant and inadmissable without expert testimony establishing a connection between its usage and its [e]ffects."[3]

> We review the trial court's decisions on the admissibility of evidence, including a denial of a motion in limine, for an abuse of discretion. And motions in limine should only be granted with great care and when there is no circumstance under which the evidence at issue could be admissible at trial. By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial.

---

[2] Phillips included in the motion a request to bifurcate the case in the event the evidence of alleged drug use was admitted so "that the inadmissible evidence of drug use only causes the reversal of the wrongful death cause of action."

[3] Mendoza made a proffer of the evidence at trial, including the treating doctor's deposition and the medical records.

*Central Ga. Women's Health Center v. Dean*, 342 Ga. App. 127, 139 (2) (800 SE2d 594) (2017) (citation and punctuation omitted).

"Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. But generally, under OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules[.]" Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "Rule 403 is an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility." *Dean*, 342 Ga. App. at 141 (2) (citation and punctuation omitted).

> To determine whether relevant evidence is more probative than prejudicial, our Supreme Court has explained that, generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And, the extent to which evidence tends to make the existence of a fact more or less probable

8

depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered.

*Mike v. State*, 358 Ga. App. 113, 118 (3) (b) (853 SE2d 887) (2021).

As the trial court noted in its order denying the motion for new trial on this issue, to the extent Mendoza contends the evidence of drug use is admissible with regard to Pritchard's life expectancy, there is "no expert testimony linking the drug use suggested by the medical records ... to her life expectancy." The trial court also noted that the lack of specific information about the frequency and duration of her use of drugs, and whether individually or in combination the drugs could result in a premature death, would not be helpful to the factfinder. It found that this same rationale applied to the relevance of the evidence to the enjoyment of life. In reflecting on the prejudicial impact of the alleged drug use evidence in its denial of the motion for new trial, the trial court found the admission of the medical records prejudicial "in two ways: First, it is impermissible character evidence. Second, it risks the substantial confusion by suggesting that [Pritchard] was under the influence of drugs at the time of the accident and, therefore, ... partially at fault."

Given the record in this case, we discern no abuse of the trial court's discretion. See generally, *Taylor v. RaceTrac Petroleum*, 238 Ga. App. 761 (519 SE2d 282) (1999) (noting anecdotal evidence relied on by RaceTrac and lack of expert testimony about the effect of drugs and alcohol was inadequate to prove the effect of drugs or alcohol on, among things, life expectancy and thus irrelevant to issue of damages in wrongful death case); *Brock v. Wedincamp*, 253 Ga. App. 275, 285 (4) (558 SE2d 836) (2002) (noting the significance of not only the relevance of evidence but the quality of the evidence and that "[w]ithout testimony to a reasonable medical certainty that the decedent engaged in conduct that would have shortened her life, the trial court did not abuse its discretion in refusing to admit this evidence.").

2. Mendoza also contends that the trial court erred by refusing to excuse jurors who were inadvertently qualified twice as to any relationship they had with Mendoza's insurer. Mendoza argues that because of the "undue" prejudice caused by the jurors' exposure to insurance, the trial court should have excused the jurors who had been improperly exposed and drawn jurors from an untainted jury pool. Here, the record shows that on the first day of trial, the trial court announced that it had discovered that "before [the perspective jurors] came up [for voir dire] ... they were asked about

the pre-qualifying question about insurance, … and I think [that] two people raised their hands and said they have Progressive; they're not sure if that's even the same company." According to the staff person who questioned the jurors, they were asked, "are you a stockholder, director … [or] policy holder of Progressive Mountain Insurance Company." The judge indicated that it would qualify the jury again, and Mendoza objected that to do so would "emphasize insurance."

Continuing her objection, Mendoza elaborated that "I understand that they have to be qualified in the courtroom, but again, my objection is that they've already been pre-qualified and they were pre-qualified incorrectly." Mendoza expressed that she objected to the "entire panel based upon the improper pre-qualification." However, during voir dire the trial court posed to the panel the following question, "Are any of you officers, directors, work for, have ownership or have an immediate family member that holds those positions with Progressive Mountain Insurance Company."

During a break in the voir dire, Mendoza again objected to the qualification of the jurors and expressed that "any sort of introduction of insurance is highly prejudicial" and that given that the "entire panel is tainted … we should start over."

The court asked Mendoza if the fact that the question was asked before caused any harm and Mendoza responded that it was unclear "if there is going to be any prejudice or not, but I do need to make my record." Mendoza however, expressed that after a conversation with opposing counsel, "we want to go forward if we can," and "I'm interested in getting this case tried and over with," but "I can't withdraw my position." The trial court noted the impossibility of Mendoza being able to go forward with the trial and at the same time seat a new jury panel.

Ultimately, the trial court denied Mendoza's request to strike the jury, noting as persuasive authority this Court's holding in *Mordecai v. Cain*, 338 Ga. App. 526 (790 SE2d 539) (2016). In *Mordecai,* this Court found that "although so-called 'prequalification' may be permitted, a party who asks that qualification of prospective jurors be done during voir dire and in open court is entitled to that procedure, regardless whether prospective jurors are prequalified by a court employee before they are sent to the courtroom." Id. at 530 (1) (footnote omitted).

> Qualifying each prospective juror as to a possible relationship with a nonparty liability insurer that has an interest in the outcome of the case must be done before the parties begin to strike a jury, because the parties have the right to a panel of impartial [prospective] jurors from which to select the trial jury. In addition, qualifying each prospective juror as to

insurers if requested must be done in open court in the presence of the parties (and counsel), because a party has the right to examine prospective jurors upon the questions of their qualification, including questions regarding disqualifying ties to insurance companies.

*Mordecai*, 338 Ga. App. at 530 (1) (citations and punctuation omitted). "[W]here a civil jury was not properly qualified in this way, and where the party seeking such qualification has properly preserved the issue for review, prejudice to that party will be presumed, and in the absence of proper rebuttal, a new trial must be ordered." Id. at 529 (1). See OCGA § 15-12-135 (a) ("All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the third degree as computed according to the civil law. Relationship more remote shall not be a disqualification.").

As demonstrated by our holding in *Mordecai*, it would have been error for the trial court not to qualify the prospective, despite their pre-qualification outside of court. Any error or prejudice would have been caused by not qualifying them again in open court rather than from their pre-qualification. *Mordecai*, 338 Ga. App at. 531-532 (1) (driver entitled to new trial because of the trial court's failure to qualify the

prospective jury as requested by counsel in open court although prequalified by jury assembly administrator in jury assembly room). As Mendoza has not demonstrated either error or prejudice, this enumeration fails.

Case No. A25A1157

3. Phillips contends that the trial court erred in granting Mendoza's motion for partial summary judgment on Phillips' claim for OCGA § 13-6-11 attorney's fees based on stubborn litigiousness and the causing of unnecessary trouble and expenses. "[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law … ." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). Trial court rulings on summary judgment "enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." Id. at 624 (1) (a).

In granting Mendoza's motion for partial summary judgment on OCGA § 13-6-11 attorneys' fees, the trial court found that there was no evidence that Mendoza acted with bad faith, was stubbornly litigious, or had caused Phillips unnecessary trouble or

14

expense The trial court likewise found that summary judgment was appropriate on Phillips' claim for punitive damages.

"Where there is a bona fide controversy for the tribunals to settle, and the parties can not adjust it amicably, there should be no burdening of one with the counsel fees of the other, unless there has been wanton or excessive indulgence in litigation." *Anderson v. Cayes*, 278 Ga. App. 592, 595 (630 SE2d 441) (2006) (citation and punctuation omitted). Further, "[s]ince any … statute [that provides for the award of attorney fees] is in derogation of common law, … it must be strictly construed against the award of such damages." *VSI Enterprises v. Edwards*, 238 Ga. App. 369, 375 (2) (518 SE2d 765) (1999)(citations omitted).

Under OCGA § 13-6-11, the jury was entitled to award Phillips attorneys' fees if he "specially pleaded and has made prayer therefor" and if Mendoza acted in bad faith, had been "stubbornly litigious," or cause Phillips unnecessary trouble or expense. Phillips contends that the grant of summary judgment was improperly granted on his stubbornly litigious claim for attorneys' fees. It has be held that the essence of stubborn litigiousness is forcing the plaintiff to resort to litigation when no bona fide controversy exists. *Witty v. McNeal Agency*, 239 Ga. App. 554 (521 SE2d 619)

(1999). Thus, the actual existence of a bona fide controversy between the parties, whether of law or fact, on liability or amount of damages, or on any comparable issue, precludes an award of attorneys' fees premised on stubborn litigiousness. *Horton v. Dennis*, 325 Ga. App. 212, 217 (750 SE2d 493) (2013). See *Dimambro Northend Assocs. v. Williams*, 169 Ga. App. 219, 225 (6) (312 SE2d 386) (1983) (where a bona fide controversy existed; the evidence did not demand a verdict for either side; and there was no evidence of bad faith, stubborn litigiousness, or unnecessary trouble and expense, an award for attorneys' fees under OCGA § 13-6-11 was not supported). "Although whether a bona fide controversy exists is normally a question for the jury to decide, we have also repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness … ." *Horton,* 325 Ga. App. at 217.

Phillips argues that a jury could have found that Mendoza was stubbornly litigious based on her pleading guilty to violating traffic laws and denying liability, thus negating a showing of a bona fide controversy. Likewise, according to Phillips, as Mendoza's traffic violation equates negligence and negligence per se, there is no bona fide controversy. However, paying a fine for failure to yield or being adjudicated guilty

16

by a traffic court does not constitute an explicit voluntary admission of guilt which will establish negligence per se. *Hite v. Anderson*, 284 Ga. App. 156 (643 SE2d 550) (2007). Moreover, Mendoza was deposed and testified that she did not see Pritchard's moped until she heard a thud at the back of her car. Other than making a left turn before the collision, she could not say how the accident happened, and even speculated that she may not have seen the moped because the moped's lights were not on. She testified that she did not believe that she caused the accident, and would have yielded had Pritchard been visible.

In this case, the record shows that a bona fide controversy between the parties clearly existed throughout the litigation. Where, as here, a bona fide controversy clearly exists between the parties, the defendant is entitled to judgment as a matter of law on the plaintiff's claim for attorneys' fees and expenses of litigation based on stubborn litigiousness or the causing of unnecessary trouble and expense. *Daniel v. Smith*, 266 Ga. App. 637, 638 (1) (597 SE2d 432) (2004).

4. Phillips also contends that the trial court erred in granting partial summary judgment to Mendoza on Phillips' bad faith attorneys fees claims and claims for punitive damages. "[I]f there is no evidence of bad faith … , a court should grant a

17

defendant's motion for summary judgment on a claim for attorney fees." *Garrett v. Womens Health Care of Gwinnett*, 243 Ga. App. 53, 55 (1) (532 SE2d 164) (2000). "Bad faith under OCGA § 13-6-11 must have arisen out of how the defendant acted in dealing with the plaintiff." *City of Lilburn*, 286 Ga. App. at 571 (citation and punctuation omitted). And, as our Supreme Court has held, violation of traffic laws, without additional evidence, is insufficient to demonstrate bad faith as justification for awarding litigation expenses under OCGA § 13-6-11. See *Love v. McKnight*, 321 Ga. 196 (913 SE2d 614) (2025). The Court in *McKnight* noted that "the type of conduct in the underlying transaction that will support a claim for "bad faith" expenses of litigation in a tort action requires conduct that is generally indicative of intentional wrongdoing or of a reckless disregard of known harmful consequences and must be more than mere negligence." Id. at 198 (2).

Likewise, OCGA § 51-12-5.1 (b) provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." And, as in establishing bad faith

18

[s]omething more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages. Punitive damages cannot be imposed without a finding of culpable conduct based upon either intentional and wilful acts, or acts that exhibit an entire want of care and indifference to consequences.

*MDC Blackshear v. Littell*, 273 Ga. 169, 173 (537 SE2d 356) (2000).

Because Phillips has not shown conduct that could support a jury issue as to bad faith or punitive damages, the trial court did not err in granting partial summary judgment to Mendoza on these claims.

5. Phillips contends that the trial court's preponderance of the evidence charge given in phase one of the trial was erroneous as it was based on a repealed statute that references reasonable doubt.[4] This error, Phillips contends, warrants a new trial on his OCGA § 9-11-68 (e)[5] attorneys' fees claims. Phillips cites this Court's decision in

---

[4] We note that Phillips has not cited to the record exactly where this charge was given. This enumerated error contains one citation to the record, and that citation recounts the attorneys' discussion about giving a different charge.

[5] That statutory provision provides,
 (e) Upon motion by the prevailing party at the time that the verdict or judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim

*White v. Stanley*, 369 Ga. App. 330 (893 SE2d 466) (2023). In *White*, we held that the pattern instruction on the preponderance of the evidence standard applicable in civil cases also referenced the higher reasonable doubt burden of proof applicable to criminal cases and thus posed significant risk of confusing or misleading the jury as to

---

or defense. In such event, the court shall hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses. Under this subsection:

(1) Frivolous claims shall include, but are not limited to, the following:

(A) A claim, defense, or other position that lacks substantial justification or that is not made in good faith or that is made with malice or a wrongful purpose, as those terms are defined in Code Section 51-7-80;

(B) A claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position; and

(C) A claim, defense, or other position that was interposed for delay or harassment[.]

the applicable burden of proof and was, thus, disapproved. Id at. 336-37 (1). The charge given in *White* provides,

> The plaintiff has the burden of proof, which means the plaintiff must prove whatever it takes to make his case, except for any admissions in the pleadings by the defendant. The plaintiff must prove his case by what is known as preponderance of the evidence; that is, evidence upon the issues involved, while not enough to wholly free the mind from a *reasonable doubt*, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other.

Id. at 333 (1) (emphasis supplied). See Georgia Suggested Pattern Jury Instructions, Vol. I: Civil Cases (2002), § 02.020 ("The plaintiff has the burden of proof, which means that the plaintiff must prove whatever it takes to make his/her case, except for any admissions (in pleadings) by the defendant. The plaintiff must prove his/her case by what is known as a preponderance of the evidence; that is, evidence upon the issues involved, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other.").

In its order denying Phillips' motion for a partial new trial, the trial court acknowledged that the pattern preponderance of the evidence charge it had given was

erroneous, also citing *White* and noting that our prior Evidence Code's statutory definition of preponderance of the evidence which included the phrase "beyond a reasonable doubt" was repealed, but concluding that the giving of the charge was harmless. The court concluded that, given that the evidence at trial supported the jury's conclusion that Mendoza had not put forth a frivolous defense such that OCGA § 9-11-68 (e) attorneys' fees were not warranted, the giving of the erroneous charge was harmless.

In Georgia, to show reversible error, there "must be harm as well as error." *White*, 369 Ga. App at 338 (2). Phillips contends that based on evidence of Mendoza's negligence as shown by her being cited for and pleading guilty of failure to yield, the jury could have found that Mendoza's defense was frivolous. However, given the evidence discussed above reflecting a bona fide controversy and the lack of bad faith, he is highly probable that the erroneous charge did not contribute to the jury's verdict that Phillips was not entitled to frivolous defense attorneys' fees.

6. Phillips challenges what he contends are inadmissible and prejudicial statements made by defense counsel during closing arguments made during the bifurcated trial on the OCGA § 9-11-68 (e) claim. Defense counsel argued, "This

22

issue of good faith, substantial justification, laws or facts that a court could accept, the very fact that we're here in front of you and arguing and it went to you signals to you that the Court understood—" Phillips' counsel objected, and in a sidebar between the attorneys and the trial court, criticized the attorney saying "the fact that we're here shows that the Court believes that it was not frivolous, that it was not in bad faith and that it was justified. The Court supports our defense and the Court believes our defense. That is improper. That is wrong." Counsel argued that the language was sufficient to support a mistrial, as the language implied that "the Court has picked a side." Counsel continued, "I'm going to specifically ... make a motion for a mistrial based on the arguments and false implications of defendant's counsel and request that we reconvene a different jury at another time to make a determination under OCGA § 9-11-68 (e)." The trial court sustained the objection, denied the motion for mistrial, and gave counsel's requested curative instruction. The trial court then instructed the jury as follows:

> Ladies and gentlemen of the jury, I will just say to you again, I want to emphasize to you that nothing the Court did or said during the trial of the case was intended to intimate, hint, or suggest to you which of the parties should prevail in this case. Whichever of the parties is entitled to a verdict is a matter entirely for you to determine.

Counsel did not renew his request for a mistrial after the trial court gave the requested curative instruction.

"Waiver … results for the … reason that trial counsel failed to renew his motion for mistrial after the trial court gave the curative instruction he requested. Even in the absence of waiver, a trial court does not abuse its discretion in granting requested relief." *Holt v. State*, 248 Ga. App. 334, 335-336 (546 SE2d 83) (2001) (citations and punctuation omitted). *Cherokee Nat. Life Ins. v. Eason*, 276 Ga. App. 183, 187 (2) (622 SE2d 883) (2005) ("[L]itigant cannot acquiesce to a trial court's ruling and then assign error to it later. Nor can a party complain of an error which its own conduct procured or aided in causing."). "Accordingly, this enumeration presents no basis for reversal." Id.

*Judgments affirmed. Brown, C. J., and Watkins, J., concur.*